## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ex rel. ) | |
| DR. WILLIAM MESHEL and ) | |
| DR. MAN TAI LAM, ) | |
| ) | |
| Relators, ) | |
| ) | |
| v. ) | Civil Action No. EP-02-CA-0525 |
| ) | Honorable Kathleen Cardone |
| TENET HEALTHCARE ) | |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## RELATORS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page No.

I.  SUMMARY ........................................................................................................... 1

II.  ARGUMENT ......................................................................................................... 2

A.  Relators Qualify as Original Sources for the Purposes of 31 U.S.C. § 3730(e)(4)(A) .... 2

1.  Relators Have Direct and Independent Knowledge of the Information on which
    the Allegations are Based......................................................................... 3

2.  Relators Voluntarily Provided the Information to the Government ....................... 9

B.  The Kickback Claim Meets the Pleading Requirements of FRCP 9(b)......................... 10

III.  CONCLUSION ...................................................................................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

Page No.

*C.C. Port, Ltd. v. Davis-Penn Mortgage Co.*, 61 F.3d 288 (5th Cir. 1995)......................................9

*Guidry v. United States Tobacco Co.*, 188 F.3d 619 (5th Cir. 1999) ..............................................12

*McNutt ex rel. United States v. Haleyville Medical Supplies, Inc.*, 423 F.3d 1256 (11th Cir. 2005) ............................................................................................................................13

*Springfield Terminal Railway Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994)................................8, 9

*The Scooter Store v. Leavitt*, 2005 U.S. Dist. LEXIS 32348 (W.D. Tex. Oct. 18, 2005)..............14

*U.S. ex rel. Coppock v. Northrop Grumman*, 2003 U.S. Dist. LEXIS 12626 (N.D. Tex. July 22, 2003)......................................................................................................................5, 6

*U.S. ex rel. Farmer v. City of Houston*, 2005 U.S. Dist. LEXIS 18387 (S.D. Tex. May 5, 2005) ...............................................................................................................................6, 7

*U.S. ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675 (D.C. Cir. 1997.) .................10

*U.S. ex rel. Johnson v. Shell Oil Co.*, 33 F. Supp. 2d 528 (E.D. Tex. 1999).....................................7

*U.S. ex rel. King v. Alcon Laboratories*, 232 F.R.D. 568 (N.D. Tex. 2005) ...........................12, 14

*U.S. ex rel. Laird v. Lockheed Martin Engineering & Science Services Co.*, 336 F.3d 346 (5th Cir. 2003)................................................................................................. *passim*

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048 (9th Cir. 2001) ...............................12

*U.S. ex rel. Reagan v. East Texas Medical Center Regional HealthCare System*, 384 F.3d 168 (5th Cir. 2004)...................................................................................................................7

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare, Inc.*, 125 F.3d 899 (5th Cir. 1997).....12, 14

*Williams v. WMX Tech., Inc.*, 112 F.3d 175 (5th Cir. 1997) .........................................................12

## FEDERAL STATUTES

31 U.S.C. § 3730(e)(4)........................................................................................................................3

F.R.C.P. 9(b) ............................................................................................................................ *passim*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| ex rel. | ) | |
| DR. WILLIAM MESHEL and | ) | |
| DR. MAN TAI LAM, | ) | |
| | ) | |
| Relators, | ) | |
| | ) | |
| v. | ) | Civil Action No. EP-02-CA-0525 |
| | ) | Honorable Kathleen Cardone |
| TENET HEALTHCARE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## RELATORS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff-Relators Dr. William Meshel and Dr. Man Tai Lam ("Relators") respectfully submit this Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss ("Defendant's Motion" or the "Motion").[1]

### I.    SUMMARY

Relators' Third Amended Complaint ("TAC" or "Complaint") asserts two claims against Defendant – the Outlier claim and the Kickback claim. Both claims arise under the False Claims Act, 31 U.S.C. § 3729 (the "FCA") and allege fraud by Defendant in connection with federally-funded health care programs.

---

[1] On April 18, 2006, the Relator was informed by the government that it intended to file a "statement of interest" concerning Defendant's Motion to Dismiss. The government informed Relator it intended to file such statement, and, indicated to counsel for the Relators the government did not believe that the Court's previously imposed brief-filing deadlines applied to it and that it could file the statement of interest at any time during the proceeding. The government further advised Relator that it had contacted Defendant to discuss its intention. The government advised Relator that the government believed that Relator would want to see the government's brief before filing its response to Defendant's Motion to Dismiss, and that, during the government's discussions with Defendant, Defendant had informed the government that it would not oppose an extension permitting Relator to file its opposition after it had an opportunity to review the government's statement of interest. For these reasons, Relator sought the extension of time to file its opposition to both the government and defendant filings. With the permission of the Court, the Relator requests an opportunity to respond to the government's statement of interest.

Defendant's Motion seeks to dismiss the Outlier claim on the ground that the allegations of fraud were publicly disclosed and that Relators do not qualify as "original sources" under the FCA. On this point, Defendant's Motion must fail. Relators qualify as "original sources" under the FCA because: (1) Relators have direct and independent knowledge of the information on which the Outlier fraud claim is based, as evidenced by their direct and personal experience and independent investigation of the fraud, and (2) Relators voluntarily provided this information to the government prior to filing their *qui tam* action and prior to the alleged public disclosures on which Defendant's argument is based.

Defendant's Motion also seeks to dismiss the Kickback claim on the ground that the Complaint does not meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). On this point, Defendant's Motion must also fail. The Complaint asserts with requisite particularity in the circumstances of this case, the who, what, when, where, and how of the Kickback claim – namely, that for a period of more than ten (10) years, Defendant made payments or gave benefits to certain physicians to induce patient referrals to Tenet facilities, that these physicians made patient referrals to Tenet facilities even when other facilities were more convenient for the patients, and that Tenet submitted claims for payment to the government from services rendered as a result of these improperly induced referrals.

## II.    ARGUMENT

### A.    Relators Qualify as Original Sources for the Purposes of 31 U.S.C. § 3730(e)(4)(A)

Even if the Court concludes there was a public disclosure of the Outlier fraud claim prior to the filing of Relators' initial complaint – which Relators do not concede – dismissal is not warranted because Relators qualify as original sources pursuant to the False Claims Act, as interpreted by applicable case law.

31 U.S.C. § 3730(e)(4)(A) sets forth a jurisdictional bar over *qui tam* actions and provides:

No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government [General] Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

To determine if a person is an "original source," courts have employed a two-prong analysis.  An original source must have (1) "direct" and "independent knowledge" of the "information on which the allegations are based" and (2) "voluntarily provided the information to the Government" before filing a *qui tam* action.  31 U.S.C. § 3730(e)(4)(B); *U.S. ex rel. Laird v. Lockheed Martin Engineering & Science Services Co.*, 336 F.3d 346 (5th Cir. 2003).

Defendant's Motion to Dismiss is lacking in two key respects.  First, Defendant fails to set forth the standards and parameters employed by the Fifth Circuit in determining whether relators in *qui tam* actions qualify as original sources.   Second, without any clarification, Defendant blends and distorts the different and contradictory approaches employed by other circuits to support its argument.  As set forth herein, upon application of the standard favored by the Fifth Circuit to the facts in the present case, it is readily apparent that Relators have direct and independent knowledge of the information upon which the allegations are based, and that Relators voluntarily provided such information to the government prior to filing their *qui tam* action.

1.    **Relators Have Direct and Independent Knowledge of the Information on which the Allegations are Based.**

The circuit courts are split as to whether a relator must have direct and independent knowledge of information regarding the allegations in the *qui tam* complaint or whether the requirement relates to information regarding the allegations made in the public disclosure.  In addressing this issue, the Fifth Circuit has concluded that the original source requirement is met if "an individual has 'direct and independent knowledge' of the 'information' on which the

allegations in the public disclosure are based." *Laird*, 336 F.3d at 354. Ignoring this standard, Defendant's Motion notes only that the allegations in the public disclosure and those in the Complaint are identical, apparently asking this Court to assume that Relators do not have direct and independent knowledge of any information that was publicly disclosed. Defendant's Motion at 11.

Relators acknowledge that the report released by UBS Paine Webber on October 28, 2002 (the "Weakley Report"), attached as Exhibit 1 to Defendant's Motion, raised concerns about Tenet's Outlier practices based dramatic increases in Outlier payments made to Tenet, as compared to other hospitals. Weakley Report at 1. The report contained an explanation of the Medicare Outlier program and how Outlier payments are determined. Table 1 of the Weakley Report illustrates that Tenet was "benefiting from increasing Outlier payments at a rate that is significantly greater than that of . . . the rest of the industry." Weakley Report at 3.

The Complaint, however, clearly demonstrates that Relators have direct and independent knowledge of information upon which the allegations contained in the Weakley Report were based. Defendant fails to acknowledge that Dr. Lam, by virtue of his management positions at both Tenet and non-Tenet facilities, had direct and independent knowledge that the Tenet facilities were earning "substantially higher profits" than their non-Tenet counterparts. (TAC, ¶ 11.) At the same time, both Drs. Meshel and Lam were aware that Tenet's charges for certain Diagnosis Related Groups ("DRGs") were up to three times higher than Southwestern's. (TAC, ¶ 15.) By virtue of their own independent investigation conducted months prior to publication of the Weakley Report, Relators determined that the average Outlier payments to the two Tenet hospitals in El Paso constituted 25 percent of total Medicare reimbursement, while such payments constituted a five percent total return at other El Paso hospitals. (TAC, ¶ 21). A comparison of the Relators' disclosures to the government with the information in the Weakley Report makes it apparent that the Relators had the same information as Weakley subsequently

4

reported, and that the Relators' report to the government went further than Weakley's, *e.g.*, allegations of unwarranted inflation of "charges," the *sine quo non* of Outlier fraud.

By determining that Tenet was inflating its DRG charges, Relators discovered the vehicle by which Tenet was conducting its fraudulent transactions, and it is this discovery that served as the basis for Relators' allegations of fraud that they made to the government in early 2002. As Relators explained to the FBI agents, it is Tenet's inflation of its cost-to-charge ratio that allowed it to "obtain more than its share of funds from the Medicare/Medicaid outlier system." Motion at 1.

Applying the standard established in *Laird*, a federal district court in Texas clarified the elements of the original source requirement. In order to qualify as an original source, a relator need not have direct and independent knowledge of the misrepresentations that were made to the government. Rather, a relator must demonstrate that he/she has direct and independent knowledge of the facts that show the falsity of a defendant's claims. *U.S. ex rel. Coppock v. Northrop Grumman*, 2003 U.S. Dist. LEXIS 12626 at *20 (N.D. Tex. July 22, 2003).

The relator's claims in *Coppock* involved alleged false claims made to the government in connection with a flash mix basis leak that caused waste and treatment chemicals to seep in to the surrounding soil at a plant owned and operated by the United States Navy. At the time of the leak, the defendants in that case were leasing property from the Navy pursuant to several lease agreements. Id. at *4-7. The relator contended that defendant's actions violated the lease agreements with the government. *Id.* at *6-7. The judge in *Coppock* rejected the defendant's argument that the relator failed to qualify as an original source as a result of his testimony that he had not read the governing contracts, had not reviewed the documents submitted to the government by the defendant, and was not involved in the rent calculations related to the leases. *Id.* at *26-27.

As explained by *Coppock*, this Court maintains original source jurisdiction regardless of whether Relators had specific information as to the claims submitted to the government by Tenet. To require such knowledge would defeat the purpose of *qui tam* actions. Presumably, the government is aware of the claims made by Tenet. It is the Relators' role to provide the government with the aspects of the case that it lacks – namely, why Tenet's claims are false. *Id.* at *24. Relators had direct and independent knowledge that Tenet's DRG charges well exceeded the industry standard. Relators also knew that manipulations of the DRG charges would result in inflated Outlier payments. These facts, in and of themselves, are sufficient to show the falsity of Tenet's claims. Thus, Defendant's criticism that Relators "were not privy to any internal processes through which Tenet's charges were determined" (Motion at 12) is misplaced and irrelevant to this Court's consideration of whether Relators qualify as an original source. Indeed, Defendant's position asks this Court to reject the plain language of the False Claims Act and well established case law which make clear that a relator need not be a company "insider" to qualify as an "original source." *See, e.g., U.S. ex rel. Farmer v. City of Houston*, 2005 U.S. Dist. LEXIS 18387 (S.D. Tex. May 5, 2005) (non-insider relator permitted to bring *qui tam* action).

In *Laird*, the Fifth Circuit took the approach favored by the majority of circuit courts and treated the direct and independent requirements as two separate inquiries that must be addressed as part of the original source analysis. *Laird*, 366 F.3d at 354. The Fifth Circuit defines direct knowledge as "knowledge derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others." *Laird*, 366 F.3d at 355. Direct knowledge can be gained through a relator's observations made or knowledge acquired during his employment. *U.S. ex rel. Johnson v. Shell Oil Co.*, 33 F. Supp. 2d 528 (E.D. Tex. 1999). In order to be independent, the knowledge must not be derived from the public disclosure. *U.S. ex rel. Reagan v. East Texas Medical Center Regional HealthCare System*, 384 F.3d 168, 177 (5th Cir. 2004).

6

Even if a relator's knowledge is based on public information, such knowledge can nevertheless be considered direct and independent if it is gathered by virtue of the relator's own efforts. *Farmer*, 2005 U.S. Dist. LEXIS 18387, *13-14. The court in *Farmer* found that the relator in that case was the original source of the information because her own investigation "demonstrated a new and undisclosed relationship between disclosed facts and put HUD 'on the trail' of fraud." *Id.* at *14, quoting. *Reagan*, 384 F.3d at 179 (5th Cir. 2004). Neither *Reagan* nor *Farmer*, requires that the government proceed down the trail disclosed by a relator in order for the relator to qualify as an original source. Rather, a relator is only required to point the way for the government.

In *Farmer*, the relator conducted her own investigation into the charges submitted by Houston Area Urban League ("HAUL") to the Department of Housing and Urban Development. While the relator in that case used publicly available information to perform her investigation, she instigated her investigation based on her own independent knowledge that the agency overestimated the amount of materials need to repair her roof. *Id.* In addition, the relator's efforts in *Farmer* resulted in the discovery of new information that was instrumental in the subsequent review of HAUL's practices. *Id.* at 15.

Similarly, in the present case, Relators initiated their investigation into Tenet's charging practices based on their direct and independent knowledge that both Providence Memorial Hospital and Sierra Medical Center were charging prices for DRGs that greatly exceeded the industry standard. (TAC, ¶¶ 11, 15.) Through their own investigative efforts, Relators obtained direct and independent knowledge of two pieces of new and critical information that should have put the government on the trail of the fraud committed by Tenet: (1) two Tenet facilities in El Paso were charging extraordinary prices for DRGs and (2) the Outlier payments received by these two facilities outpaced those received by other El Paso hospitals by 20 percent. (TAC, ¶ 21). In short, Relators' knowledge of the Medicare Outlier program, in combination with their

investigative analysis, allowed them to discover a "new and undisclosed relationship" between these two facts:  By inflating their DRG charges, Tenet facilities in El Paso were able to manipulate the Outlier program and receive unjustified Outlier payments.

The D.C. Circuit, in the seminal case *Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994), developed a mathematical formula ("X + Y = Z") to illustrate the principle of public disclosure, which is instructive for determining whether a relator qualifies as an original source.  As the court explained,

> [I]f X + Y = Z, Z represents the allegation of fraud and X and Y represent its essential elements.  In order to disclose the fraudulent transaction publicly, the combination of X and Y must be revealed from which the readers or listeners may infer Z.

*Id.* at 654.  To qualify as an original source, a relator need not have direct and independent knowledge of "*all* vital ingredients of the fraudulent *transaction*." *Springfield Terminal*, 14 F.3d at 656-57.  Instead of having to demonstrate the direct and independent knowledge of both the X and Y elements, a relator is only required to demonstrate direct and independent knowledge of just one of the essential elements (*i.e.*, either X or Y) of the fraudulent claim. *Id.* at 657.

Contrary to the holding in *Springfield Terminal*, Defendant asks this Court to impose a higher standard on Relators – namely, that to qualify as an "original source," Relators must possess specific and independent knowledge of *both* X and Y, or, in other words, Z (*i.e.*, the fraudulent claims submitted by Tenet to the government).  Relators' knowledge that Tenet was using inflated DRG charges and receiving unusually high Outlier payments is direct and independent knowledge of an essential element of Tenet's fraudulent claims and qualifies Relators as original sources.  As a result of the two pieces of information provided by the Relators, the government was then able to arrive at the conclusion that a fraud had been committed.

## 2.    Relators Voluntarily Provided the Information to the Government.

In addition to having direct and independent knowledge of the information regarding the allegations made in the public disclosure, Relators have voluntarily disclosed the information to the government prior to filing the present action. Relators filed their first complaint in this case on November 18, 2002. (Motion at 1). For approximately one year prior to filing their complaint – and one year prior to the publication of the Weakley Report – Relators met with FBI agents and disclosed essential information regarding Tenet's unusually high DRG charges and Outlier payments.

When deciding Defendant's Motion to Dismiss, the facts and allegation contained in the Complaint must be taken as true. *C.C. Port, Ltd. v. Davis-Penn Mortgage Co.*, 61 F.3d 288, 289 (5th Cir. 1995). The timeline established in the Complaint demonstrates that the Relators provided information to the government prior to the first public disclosure – the October 28, 2002 publication of the Weakley Report. Dr. Meshel first informed FBI agents of Tenet's high DRG charges in January or February 2002. (TAC, ¶ 14.) In September 2002, Dr. Meshel presented FBI agents with the results of his and Dr. Lam's analysis regarding Tenet's Outlier practices. (TAC, ¶ 19.) On November 14, 2002, Dr. Meshel sent two email messages to FBI agents summarizing information he had previously provided to the FBI. Included in this summary was the Relators' discovery that Tenet's El Paso facilities were realizing a substantial higher Outlier payment return than other El Paso hospitals. (TAC ¶ 21.)

As explained herein, the information provided by Relators to the FBI was sufficient to put the government on the trail of Tenet's fraudulent Outlier claims. Relators are not disqualified as original sources simply because information that they provided to the government was subsequently discovered and reported. *U.S. ex rel. Findley v. FPC-Boron Employees' Club*, 1055 F.3d 675, 690 (D.C. Cir. 1996).

Defendant's contentions that Relators failed to voluntarily provide information to the government is nothing but a rehash of the argument that Relators did not have direct and independent knowledge of the information. Moreover, as acknowledged by Defendant, the information contained in the Weakley Report was "sufficient to put the government on notice of the alleged fraud" and presented the elements of Tenet's alleged fraudulent transaction. (Motion at 9). Because Defendant contends in one portion of its Motion to Dismiss that the "Relators' claim, fairly characterized, 'merely echoes' the information disclosed in the Weakley Report," Defendants should be barred from subsequently arguing that the Complaint fails to present any essential element of Tenet's fraudulent scheme. (Motion at 10, quoting *Findley*, 105 F.3d at 688). Equally compelling, the Defendant's admission that the Relators echoed the Weakley Report and that the Weakley Report is a public disclosure of the fraud dooms the Defendant's motion because since the Relators provided this information before the Weakley Report existed, *ipso facto*, it is impossible for the Relators to have relied upon the Weakley Report for the dispositive factual information that the Relators provided to the government.

As demonstrated in the Complaint, by virtue of their own direct and personal experience and their own independent investigation – which was conducted prior to the publication of the Weakley Report – Relators have direct and independent knowledge of an essential element of its fraudulent Outlier claim. Further, as demonstrated in the Complaint, Relators voluntarily provided this knowledge and information to the government, and did so prior to publication of the Weakley Report. Accordingly, Relators qualify as an "original source" and Defendant's Motion to Dismiss the Outlier claim should be denied.

**B.    The Kickback Claim Meets the Pleading Requirements of FRCP 9(b).**

The Complaint alleges with particularity the fraudulent scheme and the essential elements and particulars of Relators' Kickback claim. (TAC, ¶¶ 34-42, 46). Although Relators agree that the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to *qui tam* actions,

Defendant's Motion to Dismiss applies an overly stringent interpretation of Rule 9(b) that has been rejected by federal courts in this circuit, and ignores the allegations in the Complaint. As demonstrated below, Relators' Kickback claim should survive the Motion to Dismiss.[2]

Defendant asserts that the Complaint fails to allege the necessary "who, what, where, when, and how" of the Kickback claim. Specifically, Defendant asserts that the Complaint fails to allege:

> (1) *who* offered or paid remuneration, and *who* referred patients to Tenet hospitals in exchange for kickbacks; (2) *where* such patients were referred; (3) the *date(s)* of the alleged referrals; (4) the *number* of alleged referrals; and (5) *how* any such referral ever resulted in the submission of a false claim for payment.

Motion at 18. Defendant's argument not only ignores the legal standard that must be applied to the Complaint, and but also attempts to confuse the elements of and basis for Relators' Kickback claim.

The Fifth Circuit has held that a relator generally must allege the "who, what, when, where, and how" of the alleged fraud. *U.S. ex rel. Thompson v. Columbia/HCA Healthcare, Inc.*, 125 F.3d 899, 903 (5th Cir. 1997). However, in cases where a relator alleges that the fraud occurred over a multi-year period, the relator is not required to allege all facts supporting each and every instance when each defendant engaged in fraud. *U.S. ex rel. King v. Alcon Labs.*, 232 F.R.D. 568, 570 (N.D. Tex. 2005) (citing *U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001)). In addition, when the facts relating to the alleged fraud are peculiarly within the defendant's knowledge or control or where fraud occurred over an extended period of time and consists of numerous acts, the specificity requirements of Rule 9(b) are applied less stringently. *See, e.g., Thompson*, 125 F.3d at 903.

---

[2] Defendant's Motion to Dismiss argues only that Relators' Kickback claim fails to meet Rule 9(b) pleading requirements. Defendant does not allege any other basis for dismissing this claim.

Indeed, the requirements of Rule 9(b) must be balanced with those of Rule 8(a). As the Fifth Circuit has acknowledged, Rule 9(b) must be read together with the Rule 8(a) requirement that pleadings be "simple, concise, and direct" and, the heightened pleading requirements of Rule 9(b) "do[ ] not reflect a subscription to fact pleading." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). Accordingly, although a relator must plead fraud with particularity, that particularity need not be "long or highly detailed." *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 632 (5th Cir. 1999).

The Complaint plainly alleges the *what* of the fraud – that Tenet paid certain physicians payments to induce patient referrals to Tenet facilities, that these physicians made an unusually high number of referrals to Tenet facilities when other medical facilities were more convenient for patients, and that Tenet submitted claims for Medicare, Medicaid and other federal health care programs resulting from these improperly induced referrals. (TAC, ¶¶ 34-42, 46).

Further, contrary to Defendant's assertion, Relators have named the *who* of the fraud – the Complaint alleges that *Tenet* made cash or in-kind payments to *certain physicians* who are identified with particularity. Specifically, the Complaint alleges that payments or in-kind benefits were made by Tenet to five oncologists, an infectious disease specialist, four members of the pulmonary group, four surgeons, two obstetricians/gynecologists, and four urologists. (TAC, ¶¶ 36, 39-41).

The Complaint alleges the *where* of the fraud, alleging that an unusually large number of patients were referred to Tenet facilities that were located some distance from the physicians' office, despite the fact that another hospital (the Del Sol Hospital) was located across the street from the office. (TAC, ¶ 39).

The Complaint also alleges the *when* of the fraud – namely, that payments had been made by Tenet to physicians since the 1980s, that four surgeons had received payments by Tenet from 1992 through 2002, that two obstetricians/gynecologists had received payments by Tenet from

1995 through 2002, and that benefits such as free or reduced rent were provided to certain oncologists in 1999. (TAC, ¶¶ 36, 40-41).

Finally, the Complaint alleges the *how* of the fraud – namely that payments made by Tenet to certain physicians induced patient referrals to Tenet facilities. (TAC, ¶¶ 39, 42). When Tenet submitted to the Federal government claims for payment of medical services for patients referred to Tenet facilities as a result of the improper payments or in-kind benefits, and/or when Tenet included the costs of providing such services on its Medicare Part A Cost Reports, it knowingly presented or caused to be presented a false or fraudulent claims for payment and created a false record or statement to get payment of a false or fraudulent claim. (TAC, ¶ 46). Where a medical service provider gives kickbacks or payments to physicians to induce patient referrals, and the provider then seeks reimbursement for services provided to such patients, a *qui tam* action may be maintained against the medical provider. *See, e.g., McNutt ex rel. United States v. Haleyville Med. Supplies, Inc.,* 423 F.3d 1256 (11th Cir. 2005).

The Complaint provides Defendant with sufficient information to formulate its defense, a principal purpose of Rule 9(b), and contains sufficient particularly with respect to the who, what, when, where, and how of the kickback to demonstrate that the Kickback claim has factual basis and is not frivolous. *See, e.g., King,* 232 F.R.D. at 570, n.2 (discussing the purpose of Rule 9(b)'s pleading requirements).

Defendant's assertion that Relators must provide more information – such as the number of patients referred, the specific dates of referrals, etc. – asks this Court to impose an overly stringent interpretation of Rule 9(b) to fraud claims. The specific number of patients referred and specific dates of referral are information within Defendant's knowledge and control and, as such, need not be pled to meet the requirements of Rule 9(b). *Thompson,* 125 F. 3d at 903. Further, because the Kickback claim covers a multi-year period, Relators are not required to allege all the facts supporting each and every instance when Tenet engaged in fraud. *King,* 232

13

F.R.D. at 570. Finally, a stringent interpretation of Rule 9(b) was recently rejected by a federal court in this district. In *The Scooter Store v. Leavitt*, 2005 U.S. Dist. LEXIS 32348 (W.D. Tex. Oct. 18, 2005), Judge Ferguson expressly rejected plaintiff's arguments that, to maintain its claim under False Claims Act, the government must identify specific wheelchairs that were billed as "new" but were in fact used, and that the government must identify specific medical equipment that was not medically necessary. *Id.* at *8, n.15. As the court stated, "While it is true that the [government] has failed to [identify] these things, Rule 9(b)'s particularity requirement is not so stringent as to require them." *Id.*

The Complaint meets the pleading requirements of Rule 9(b), alleging the who, what, when, where, and how of the Kickback claim. Accordingly, this Court should deny Defendant's Motion to Dismiss.

## III.    CONCLUSION

For the foregoing reasons, Relators respectfully request that this Court deny Defendant's Motion to Dismiss.

Dated this 27th day of April 2006.

Respectfully submitted,

**ANTONIO V. SILVA, P.C.**

By:_____

Antonio V. Silva
State Bar No.: 18351350
N.M. Bar No.: 3769
2616 Montana Avenue
El Paso, Texas 79903
Telephone: (915) 564-5444
Facsimile: (915) 564-4413

14

Philip R. Michael (admitted *pro hac vice*)

TROUTMAN SANDERS LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Tel: (212) 704-6318
Facsimile: (212) 704-6288

Mark E. Nagle (admitted *pro hac vice*)
TROUTMAN SANDERS LLP
401 9th St., NW, Suite 1000
Washington, D.C. 20004-2134
Tel: (202) 274-2972
Facsimile: (202) 654-5666

Stephen Meagher (admitted *pro hac vice*)
The Law Offices of Stephen Meagher
One Embarcadero
San Francisco, CA 94111
Tel: (415) 773-2827

*Counsel for Plaintiff-Relators*

### CERTIFICATE OF MAILING

I, Antonio V. Silva, do hereby certify that a true and accurate copy of the foregoing was mailed to Mr. Joseph Hood, Attorney at Law, SCOTT HULSE, 1100 Chase Tower, 201 E. Main, El Paso, Texas 79901, Ms. Catherine Lauer, Esq., Latham & Watkins, 600 West Broadway, Ste. 1800, San Diego, CA 92101, Mr. Mitch Wiedenbach, Assistant U.S. Attorney, United States Attorneys Office, 601 NW Loop 410, Ste 600, San Antonio, TX 78216, and Ms. Rachel B. Irish, Trial Attorney, Civil Division, U. S. Department of Justice, P.O. Box 261, Ben Franklin Station, Washington, DC 20044 and on this 27th day of April 2006.

_____
Antonio V. Silva

15