United States Court of Appeals<br/>Fifth Circuit<br/><b>F I L E D</b><br/>July 22, 2008<br/>Charles R. Fulbruge III<br/>Clerk

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 07-51042

D.C. Docket No. 3:02-CV-525



UNITED STATES OF AMERICA, ex rel, Dr Man Tai Lam
Dr William Meshel

    Plaintiff

v.

DR MAN TAI LAM; DR WILLIAM MESHEL

    Plaintiffs - Appellants

v.

TENET HEALTHCARE CORPORATION

    Defendant - Appellee

UNITED STATES OF AMERICA

    Intervenor-Appellee

Appeal from the United States District Court for the
Western District of Texas, El Paso.

Before DAVIS, SMITH, and DeMOSS, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

IT IS FURTHER ORDERED that plaintiffs-appellants pay to appellees the costs on appeal to be taxed by the Clerk of this Court.

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit
By: Rhonda Parker
    Deputy

ISSUED AS MANDATE: SEP 15 2008

New Orleans, Louisiana   SEP 15 2008

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 22, 2008

No. 07-51042

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA, ex rel. Dr. Man Tai Lam, Dr. William Meshel,

                                             Plaintiff,

v.

DR. MAN TAI LAM; DR. WILLIAM MESHEL,

                                             Plaintiffs-Appellants,

v.

TENET HEALTHCARE CORPORATION,

                                             Defendant-Appellee,

UNITED STATES OF AMERICA,

                                             Intervenor-Appellee.

Appeal from the United States District Court
for the Western District of Texas
No. 3:02-CV-525

Before DAVIS, SMITH, and DeMOSS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR.

The Relators, Man Tai Lam and William Meshel, appeal from the dismissal of their qui tam claims alleging that Tenet Healthcare Corporation made false claims for outlier medical benefits against Medicare. When, as in this case, there has been public disclosure of the information on which the relators' allegations are based, no court has jurisdiction over an attempted qui tam suit under the False Claims Act unless the relators are the original source of the information. Because the record does not support a conclusion that the Relators had direct and independent knowledge of the alleged fraudulent practices of Tenet, the Relators cannot qualify as original sources and the district court properly dismissed this case.

I.

In general, Medicare reimbursements do not vary with the cost of treating a particular patient. Rather Medicare reimburses a fixed amount per patient based on the Diagnosis Related Group ("DRG") into which the patient falls, and further based on the patient's diagnosis and procedures performed. Outlier reimbursements, at issue in this appeal, come into play when a hospital treats a patient with an unusually long hospital stay and/or unusually costly treatments. A hospital can qualify for outlier payments when its cost-adjusted charges exceed either a fixed multiple of the applicable DRG rate or a fixed dollar amount established by the Center for Medicare and Medicaid Services ("CMS"), called the "Outlier Threshold." 42 U.S.C. § 1395ww(d)(5)(A)(iii). This is designed to permit the hospital to obtain compensation for treatment that is much more extensive than the norm.

Because hospital costs are difficult to determine, CMS regulations establish a way to estimate a hospital's costs. Prior to August 2003, those regulations allowed outlier payments when a hospital's charges multiplied by

---

R. 47.5.4.

the hospital's ratio of costs to charges in its most recent settled cost report, exceed a certain threshold. *See* 42 C.F.R. § § 412.80, 412.84 (2002). (The exact computation of outlier payments is outside the scope of this appeal.) The most recent settled cost report is likely to be several years old. Outlier payments can be manipulated if a hospital substantially increases its charges without a corresponding increase in costs. In that situation, the inflated charges, when multiplied by the hospital's historical cost-to-current charge ratio, result in an artificially high estimate of the hospital's costs, and therefore unwarranted payments from the outlier pool of funds. A hospital's charges are rarely what the hospital is paid for its services. The charges are deeply discounted by contracts with insurers and replaced by a much lower fee schedule when government insurance such as Medicare is involved.

Relators allege that Tenet improperly manipulated the outlier payment system by artificially inflating charges at two El Paso area hospitals when its real costs did not increase in proportion to the charge increases, and even declined. As a result, Tenet was allegedly able to qualify more patients as outlier patients and receive reimbursements that it was not entitled to.

II.

Relators claim that Tenet violated the False Claims Act. The False Claims Act, 31 U.S.C. § 3729, *et seq.*, ("FCA"), prohibits the submission of false or fraudulent claims for payment to the United States or the use of false statements for the purpose of causing a false claim to be paid. A person who violates the FCA is liable to the United States for civil penalties and for three times the amount of the government's damages. 31 U.S.C. § 3729(a). Suits to collect statutory damages may be brought either by the Attorney General, or by a private person (known as a relator) in the name of the United States in an action called a qui tam suit. 31 U.S.C. § 3730(a) and (b)(1).

The FCA prescribes several important limitations on the jurisdiction of courts over qui tam suits. The FCA's "public disclosure" provision states:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or [General] Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4). As this Court has recognized, the public disclosure bar divests courts of jurisdiction over qui tam suits where the allegations are "based upon" a public disclosure, unless the relator can qualify as an "original source" under the FCA. *United States ex rel. Reagan v. East Texas Med. Ctr. Regional Healthcare Sys.*, 384 F.3d 168, 176-77 (5th Cir. 2004). As stated in the statute, an original source is one "who has direct and independent knowledge of the information on which the allegations are based."

### III.

This qui tam action was filed by Relators in November 2002, but remained under seal until July 18, 2005 after the Government declined to intervene. In December 2005, Relators filed their Third Amended Complaint which alleged that Tenet: (1) artificially inflated its "cost-to-charge" ratio to obtain more than its proper share of funds from the Medicare/Medicaid outlier system (the outlier claim); and (2) offered medical directorships and office-expense reimbursements as kickbacks to induce physicians to refer their patients to the Tenet hospitals (the kickback claim). Over time Relators submitted several versions of the disclosure statement required to be filed by 31 U.S.C. § 3730(b)(2) with their

4

complaint. Pursuant to this statute, Relators were obliged to include in this statement "substantially all material evidence and information" in their possession. *Id.*

Tenet moved to dismiss the claims in May 2006. The Government supported the motion, explaining that Relators had zero impact on the Government's preexisting investigation. While the motion was pending, the Government settled with Tenet for claims relating to 165 hospitals nationwide, including the two hospitals in El Paso which Relators were familiar with. By Order dated August 14, 2006, the district court granted in part and denied in part Tenet's motion. The district court dismissed the kickback claim. The district court denied Tenet's motion to dismiss the outlier claim. However, the court found that information concerning the Government's outlier manipulation theory was publicly disclosed in a publication called the Weakley Report prior to Relators filing suit in this case. Relators do not challenge that finding. The district court correctly observed that despite the publication of this information, Relators can still sue if Relators were the "original source" of the information underlying the outlier claims. The district court concluded that there was an issue of fact on that question.

The United States and Tenet moved for summary judgment in April 2007 on the issue of Relators' status as original sources. In response to the motion, Relators appended two declarations to substantiate their knowledge of Tenet's costs and increasing charges in response to deficiencies identified by Tenet and the United States. The information in the declaration modifies and expands on the information previously submitted in the Relators' disclosure statements. The disclosure statements and the declarations were the only evidence before the district court on the motion for summary judgment. The district court granted summary judgment in favor of Tenet and the United States. The court found that Relators "cannot be said to have had direct and independent knowledge of

the information on which the allegations are based, and thus Relators cannot pass the public-disclosure bar." Relators appeal.

IV.

Because the suit in this case was filed after disclosure of the allegations in the Weakley Report and other publications, the Relators must qualify as an original source of the information in order for this suit to proceed. As stated in the statute, an original source must have "direct and independent knowledge" that forms the basis of the allegations and must show that he "voluntarily provided the information to the Government" before filing his qui tam suit. 31 U.S.C. § 3720(e)(4)(B). We focus on the first part of the test, whether the Relators meet the standard of having "direct and independent knowledge."

Based on the relevant statute and the background information on outlier payments, the defendants submit that the Relators' claim of outlier Medicare fraud would require knowledge: (1) that a hospital increased its charges, (2) with no (or no proportional) increase in costs, (3) that Tenet was submitting claims for outlier payments that were false or fraudulent, (4) with the intent to manipulate the outlier payment system. 31 U.S.C. § 3729. The question then is what type of knowledge is required.

A review of the case law in this and other jurisdictions provides background on what "direct and independent knowledge" means in the "original source" definition. "Direct" and "independent" have distinct meanings. This circuit surveyed other circuits' interpretations of the terms as follows: "direct" knowledge is obtained first hand, by the relator's own efforts rather than by the labor of others, and not derivative of the information of others. *United States ex rel. Laird v. Lockheed Martin Eng'g & Sci. Servs. Co.*, 336 F.3d 346, 355 (5th Cir. 2003). "Independent" knowledge cannot rely on any public disclosures. *Id.* This court then interpreted the term "direct" by its plain meaning as "knowledge

6

derived from the source without interruption or gained by the relator's own efforts rather than learned second-hand through the efforts of others." *Id.* The opinion also notes that Congress's intent was "to encourage qui tam suits brought 'by insiders, such as employees who come across information of fraud in the course of their employment.'" *Id.* at 355-56. Courts must "look to the factual subtleties of the case before it and attempt to strike a balance between those individuals who, with no details regarding its whereabouts, simply stumble upon a seemingly lucrative nugget and those actually involved in the process of unearthing important information about a false or fraudulent claim." *Id.* at 356.

Relators found to have direct and independent knowledge are those who actually viewed source documents or viewed first hand the fraudulent activity that is the basis for their qui tam suit. For example in *United States ex rel. Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 568 (11th Cir. 1994), the relator's knowledge of an alleged fraud by a Medicare secondary payor was "direct" because it was acquired through "three years of [the relator's] own claims processing, research, and correspondence with members of Congress and [the Health Care Financing Admin.]" In *Minn. Ass'n of Nurse Anesthetists v. Allina Health System Corp.*, 276 F.3d 1032, 1050 (8th Cir. 2002), the Association alleged that its members had "personal knowledge that defendant anesthesiologists have routinely billed Medicare for personal performance of anesthesia procedures in which they were not continuously involved or present." It further alleged that its members "have personal knowledge of defendants' false claims by virtue of communications with defendants themselves, participation in the anesthesia procedures which were later fraudulently billed by the defendant anesthesiologist, and familiarity with hospital records disclosing defendants' fraud." The court rejected the defendants' response that the anesthetists did not have direct knowledge of the anesthesiologists' billing practices, which came to light in an audit, because the record showed that the

7

anesthetists often saw the anesthesiologist filling out forms used for billing with the misleading information. These allegations were sufficient to establish that the association had direct knowledge to qualify as an original source.

In *Chen-Cheng Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1417 (9th Cir. 1992), the relator was a mechanical engineer who brought suit against his former employer claiming that it had defrauded the government by its performance on various defense contracts. As to relator's claims relating to the Bradley Fighting Vehicle which had been publicly disclosed, the court found that Wang's knowledge of the Bradley's transmission problems was direct and independent because he worked (however briefly) on trying to fix them. His claim failed for other reasons not related to this issue.

In contrast, when a relator's claim is based on knowledge received from other persons it is not direct and independent. In *United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1021 (9th Cir. 1999), the Ninth Circuit held that a member of an electrical workers' union did not meet the "direct" knowledge element since "he never participated in the negotiating, drafting, or implementation" of relevant agreements, "does not allege that he played any role in submitting false claims to the government," and simply heard second-hand (as a member of the union) that the electrical contractors were submitting false claims to the government.

In *United States ex rel. Grayson v. Advanced Mgmt. Tech., Inc.*, 221 F.3d 580, 581 (4th Cir. 2000), the relators were attorneys who represented an unsuccessful bidder for a contract with the FAA in administrative proceedings to contest the contract award to a bidder they alleged had engaged in "bait and switch" regarding its intended subcontractor. The court concluded that the relators had not demonstrated that they had independent and direct knowledge of the "bait and switch" allegations contained in the administrative protest. Rather relators, in their role as attorneys for the unsuccessful bidder, at best

verified the information in the complaint. Such conduct was insufficient to render them original sources.

Finally, in *United States Ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149 (3d Cir. 1991), the relator filed suit on behalf of the United States against Prudential Insurance Company alleging that Prudential defrauded the Government by avoiding its statutory responsibility to pay certain insurance claims as the primary insurer. Relator's knowledge was not direct because his "information about Prudential came through two intermediaries." *Id.* at 1160. *Stinson* further states that "[t]he paradigmatic 'original source' is a whistleblowing insider." *Id.* at 1161. The Relators in this case do not meet that standard.

The parties in this case dispute whether Relators' knowledge must be established by the disclosure statements only or may be established by reference to their declarations filed in opposition to the motion for summary judgment. We need not decide that question because even the evidence in the declarations falls short. First, Relators' information about rising charges at Tenet hospitals came primarily from patient complaints. They did examine a report of comparative charges for five of the most common DRGs, which indicated that Tenet's charges were among the highest in the country. However, that report did not indicate the historical changes in Tenet's charges that would be required to establish a case of outlier fraud. On the cost side, Relators' information is similarly indirect. Lam's conclusion that there was no proportionate increase in costs to warrant the increase in charges at Tenet hospitals was derived from informal discussions in doctors' lounges, staff meetings and observations about general nursing staffing, new equipment, remodeling/expansions and the degree of local wage increases. Meshel based his conclusion that it was inconceivable that higher costs caused the higher charges at Tenet hospitals on interactions with patients and doctors at the Tenet hospitals and general knowledge about

the cost of medical staffing and supplies in the El Paso area that he learned managing a non-Tenet hospital. As stated by the district court, "At no point do Relators allege or prove knowledge of whether Tenet's charges were rising, whether Tenet was artificially raising its charges, whether the charges were rising in relation to the hospital's costs, and whether Tenet had knowledge that the claims it submitted were false - all of which are necessary components in a claim of outlier fraud." Based on the caselaw outlined above, Relators' knowledge is not the type of first-hand, insider knowledge that is required to satisfy the original source standard. Further, as decided in *Rockwell International Corp. v. United States,* 127 S.Ct. 1397 (2007), a relator's suspicions cannot substitute for the requirement of direct and independent knowledge.

V.

The district court correctly concluded that Relators do not qualify as original sources of the information underlying the claims of outlier fraud. Even the information in Relators' declarations in support of their opposition to Tenet's motion for summary judgment does not establish that Relators had direct and independent knowledge of Tenet's history of charges and costs that would be required to establish a claim of outlier fraud. The district court properly granted summary judgment to appellees and the judgment of the district court is affirmed.

AFFIRMED.